504 F.2d 580
 UNITED STATES of America ex rel. Anthony REGINA, Petitioner-Appellant,
v.
Edwin LaVALLEE, Superintendent, State Correctional Facility
at Dannemora, NewYork, Respondent-Appellee.
UNITED STATES of America ex rel. John J. BATTISTA,
Petitioner-Appellant,
v.
Harold N. BUTLER, Superintendent, State Correctional
Facility at Wallkill, NewYork, Respondent-Appellee.
 Nos. 1066, 1067, Dockets 73-2722, 73-2737.
 United States Court of Appeals, Second Circuit.
 Argued June 10, 1974.
Decided Oct. 2, 1974, Certiorari Denied Feb. 24, 1975, See
95 S.Ct. 1330.
 
 Betty D. Friedlander, Waverly, N.Y. (Victor J. Rubino, New York City, on the brief), for petitioners-appellants.
 Arlene R. Silverman, Asst. Atty. Gen. of N.Y. (Louis J. Lefkowitz, Atty. Gen. of N.Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondents-appellees.
 Before HAYS, MANSFIELD and TIMBERS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 Petitioners brought this action for habeas corpus relief under 28 U.S.C. 2254 (1970) claiming that at the state court trial at which they were convicted the prosecution had failed to disclose a promise of leniency to a key prosecution witness. The district court denied relief. We affirm.
 
 
 2
 In early 1964 appellants were convicted in a New York court of first degree murder and first degree assault. The prosecution based its case in part on the testimony of one Anthony Getch. The defense sought to discredit this testimony by claiming that Getch, who had been subject to being returned to prison as a parole violator, had been promised an early release from prison in return for his cooperation. However, the defense did not call as a witness either Assistant District Attorney Catterson, the prosecutor at the trial, or former Assistant District Attorney Bendersky, who had handled part of the pre-trial preparation of the case prior to leaving the District Attorney's office. These were the two persons who the defense claimed might have made the promise. Both Getch and the prosecution denied that any such promise had been made.
 
 
 3
 The convictions were affirmed by the Appellate Division, 25 A.D.2d 658, 268 N.Y.S.2d 1006 (2d Dep't 1966) and by the New York Court of Appeals, 19 N.Y.2d 65, 224 N.E.2d 108, 277 N.Y.S.2d 683 (1966).
 
 
 4
 In 1970 appellants commenced a coram nobis proceeding in state court. The court conducted a hearing at which former Assistant District Attorney Bendersky testified that he had promised Getch that in return for his cooperation he would be released within a few months. However, other persons who had been present when the promise was alleged to have been made testified that no promise was made concerning Getch's release. The court concluded that Regina and Battista had failed to discharge their burdens of proving that a promise had been made. The Appellate Division affirmed and leave to appeal to the New York Court of Appeals was denied.
 
 
 5
 Appellants then commenced this habeas corpus proceeding, relying on Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The district court denied relief on the grounds that under 28 U.S.C. 2254(d) (1970) it had to presume that the state court's finding was correct, and that the alleged promise, even if it had been made, was not sufficiently material to warrant a new trial. We affirm.
 
 
 6
 28 U.S.C. 2254(d)(8) (1970) provides that in habeas corpus proceedings by a state prisoner the federal courts shall presume the findings of fact by a state court to be correct unless they are 'not fairly supported by the record.'[1] See Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States ex rel. Sabella v. Follette, 432 F.2d 572, 574-575 (2d Cir. 1970) cert. denied, 401 U.S. 920, 91 S.Ct. 905, 27 L.Ed.2d 822 (1971); United States ex rel. Liss v. Mancusi, 427 F.2d 225, 227-229 (2d Cir. 1970); United States ex rel. Fein v. Deegan, 410 F.2d 13, 17 (2d Cir.), cert. denied, 395 U.S. 935, 89 S.Ct. 1997, 23 L.Ed.2d 450 (1969). If the findings are supported by the record the petitioner bears the burden of showing that they are erroneous.
 
 
 7
 In this case the record of the state coram nobis proceeding supports the finding of the state court, and petitioners have not shown the findings to be erroneous. The only testimony in behalf of appellants was given by Bendersky, who met with Getch on September 18, 1963, to discuss Getch's cooperation in the prosecution of Regina and Battista. Getch first expressed fear for the safety of his family and Bendersky assured him that they would receive protection. Bendersky claimed that he then further promised Getch that in return for his cooperation an effort would be made to release him after a few months. His testimony was somewhat equivocal, however. He qualified his remarks with such statements as 'to my recollection' and 'I believe that I told him.' His uncertainty is not surprising since the meeting at which he allegedly made the promise occurred six years before the coram nobis hearing.
 
 
 8
 Several witnesses testified in opposition to appellant's petition. William J. Quinn, an employee of the New York State Division of Parole at the time of the meeting, testified that he was present throughout the meeting and heard the promise of protection for Getch's family, but that Bendersky had never promised Getch an early release from prison or even discussed the matter with Getch or anyone else. Orey Edwards, an employee of the Suffolk County Police Department, also testified that he attended the entire meeting of September 18 and heard the promise of protection but that Bendersky neither made any promise concerning nor even discussed the subject of Getch's parole.
 
 
 9
 The testimony of these two witnesses furnishes fair support in the record for the state court's finding. But there was additional evidence which further but-tresses the finding. Getch himself had testified at the trial that no promise had been made. James Catterson, Jr., who became an Assistant District Attorney in Suffolk County on September 1, 1963, and took over prosecution of appellants, testified that in January or February of 1964 he met with Bendersky to discuss the case. He asked Bendersky whether any promises had been made to Getch, and Bendersky replied that no promises had been made except the promise to protect Getch's family. Catterson also testified that he spoke to Getch before speaking to Bendersky and that Getch had told him no promises had been made. John McCarthy, a parole officer with the New York State Division of Parole, testified that he was present during the first part of the meeting of September 18 and that he heard no promise of early release. Quinn, Edwards and McCarthy also testified that Bendersky never discussed Getch's parole status with them or, to their knowledge, with anyone else connected with the Division of Parole. Appellants produced no testimony that Bendersky had discussed the matter with anyone else.
 
 
 10
 The testimony at the coram nobis proceeding also showed that shortly after the meeting of September 18 began, a stenographer was brought in to take the minutes of the meeting. The minutes contain many references to promises of protection, but the only reference to Getch's release tends to negate appellants' claim. The minutes show that near the end of the meeting Getch asked Quinn if it would be possible for him 'to get home before Christmas' and that Quinn replied that 'this matter would have to be discussed with the Parole Board and that Getch would be advised of their decision in the future.'
 
 
 11
 The conclusion of the state court was 'fairly supported by the record.' Under the circumstances the district court acted properly in denying the habeas corpus petition without a hearing. See, e.g., United States ex rel. Liss v. Mancusi, supra, 427 F.2d at 227-229.
 
 
 12
 Appellants claim that under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), it was improper for the state court to weigh the conflicting evidence in the coram nobis proceeding and for the federal district court to accept the state court's conclusions. They assert that once the new evidence was presented the court was obliged to order a new trial so that the conflicting evidence could be weighed by a jury. Under the Circumstances of this case we cannot agree.
 
 
 13
 First, by failing to call Bendersky as a witness at trial appellants waived their right to claim that he had made a promise to Getch. Unlike Giglio, this is not a case where defendants had no inkling of a promise at the time of the trial. An alleged promise by Bendersky was an integral part of the defense. Bendersky was readily available as a witness. The defense consciously decided not to call him. Appellants should not be permitted first to claim before the jury that a promise was made, without calling the person who purportedly made the promise, and then only after the first tactic had failed, to call that person as a witness in a habeas corpus proceeding in an attempt to obtain a new trial. A defendant may not obtain a new trial on the basis of evidence which he could have discovered by reasonable diligence. United States v. Marquez, 363 F.Supp. 802, 808 (S.D.N.Y.1973), aff'd mem.,490 F.2d 1383 (2d Cir. 1974); United States v. Munchak, 338 F.Supp. 1283, 1293-1294 (S.D.N.Y.), aff'd, 460 F.2d 1407 (2d Cir.), cert. denied, 409 U.S. 915, 93 S.Ct. 236, 34 L. Ed.2d 177 (1972); United States v. Edwards, 366 F.2d 853, 873-874 (2d Cir. 1966), cert. denied, 386 U.S. 908, 919, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967).
 
 
 14
 Second, this case arises in a procedural setting very different from Giglio. Giglio involved a motion for a new trial addressed to the trial judge before a direct appeal to the Court of Appeals had been concluded. The claim by the Assistant United States Attorney followed the conviction closely and occurred while he was still with the United States Attorney's office and under its control. Under such circumstances, the argument for a new trial is much stronger than here, where Bendersky first claimed to have made the promise six years after trial and more than six years after he left the District Attorney's office.
 
 
 15
 We also affirm on the ground that the additional evidence brought out at the coram nobis hearing was not material. In Giglio, the Court stated:
 
 
 16
 'We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . ..' United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968). A finding of materiality of the evidence is required under Brady, supra (Brady v. Maryland, 373 U.S. 83), at 87 (83 S.Ct. at 1196, 10 L.Ed.2d 215). A new trial is required 'if the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . ..' Napue, supra (Napue v. Illinois, 360 U.S. 264), at 271 (79 S.Ct. 1173, 3 L.Ed.2d 1217).' 405 U.S. at 154, 92 S.Ct. at 766.
 
 
 17
 In this case Bendersky's testimony was equivocal and the promise he claimed to have made was quite vague. The trial occurred only after Getch had completed his term, thus rendering it even more unlikely that any promise affected his testimony. Moreover, the State has shown that it has overwhelming evidence that no promise was made. Finally, Bendersky's testimony would also permit the disclosure of the promise to protect Getch's family, which would probably have an adverse effect on appellants' case. Thus it is most unlikely that the new testimony would have 'affected the judgment of the jury.'
 
 
 18
 For the foregoing reasons the decision of the district court is affirmed.
 
 MANSFIELD, Circuit Judge (concurring):
 
 19
 I concur, but on limited grounds.
 
 
 20
 The principal issue, as I view it, is not whether a promise was in fact made by Bendersky to Getch but whether the state, at or immediately prior to trial, knew that Bendersky might furnish evidence of such a promise and failed to disclose that fact to appellants. If so, the next question is whether the evidence was material.
 
 
 21
 On the first issue there is no showing that the state had any knowledge that Bendersky would testify to a promise. On the contrary, Assistant District Attorney Catterson (whose testimony was credited by the state coram nobis judge in findings that were properly accepted by Judge Mishler pursuant to 28 U.S.C. 2254(d)) testified that shortly before trial Bendersky denied having made the alleged promise. Furthermore, since Bendersky was not employed by the state at the time of trial, which is the crucial period for our purposes, his knowledge, unlike that of Assistant U.S. Attorney DiPaola in Giglio v. United States, 405 U.S. 150, 152 n. 1, 92 S.Ct. 763, 31 L.Ed.2d 104 (1971), cannot be attributed to the state as the basis for a claim of non-disclosure. Thus there was no concealment or negligent non-disclosure, which is essential to the grant of relief. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For these reasons I see no need to decide whether appellants waived their present claim by failing to call Bendersky as a witness at the trial.
 
 
 22
 On the question of whether in any event the alleged promise was material, I agree that it was not, for the reasons stated by Judge Hays in his opinion.
 
 
 
 [1]
 The statute provides in pertinent part:
 '(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit--
 . . . .ed
 '(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record: 'And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless . . . the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.' 28 U.S.C. 2254 (1970).